**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MICHELLE PIETRZAK,   :

          Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.   :

Case No. 3:09-cv-163

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a.

2

With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national

economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI in September, 2001, alleging disability from April 10, 2001, due to drug-induced neuropathy in her feet caused by chemotherapy from breast cancer. *See* Tr. 55-57; 322-25; 81. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 42-45, 327-35. A hearing was held before Administrative Law Judge Thomas McNichols, (Tr. 336-75), who determined that Plaintiff was not disabled. (Tr. 20-31). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge McNichols' decision became the Commissioner's final decision.

Plaintiff filed an action in this Court seeking judicial review of the Commissioner's decision. *Pietrzak v. Commissioner of Social Security,* No. 3:05cv246 (Doc. 2)(filed July 13, 2005). Subsequently, the Court remanded the matter to the Commissioner for further administrative proceedings. *Id.* at Doc. 10, 14, 15; *see also,* Tr. 417-44. On remand, the Appeals Council vacated Judge McNichols' decision and remanded the matter to him for further proceedings consistent with the Court's Remand Order. (Tr. 447-48). During that time, Plaintiff filed subsequent applications for SSD and SSI. (Tr. 415-16, 449-55, 750-58). The Commissioner consolidated those applications with Plaintiff's appeal of the denial of benefits. (Tr. 447). Pursuant to the Appeals Council's order, Judge McNichols held a hearing, (Tr. 759-809), and subsequently found that Plaintiff is not disabled. (Tr. 387-406). The Appeals Council denied Plaintiff's request for review, (Tr. 376-78), and Judge McNichols' decision became the Commissioner's final decision. This action followed.

In determining that Plaintiff is not disabled, Judge McNichols found that she has severe residuals of breast cancer with bilateral mastectomies, mild peripheral neuropathy in the lower extremities possibly secondary to chemotherapy for the breast cancer, history of mild bilateral

4

carpal tunnel syndrome (on EMG in 2002 but no longer in evidence on EMG in 2007), and arthralgias in the back and knees, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 392, ¶ 3, 397 ¶ 4). Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.,* ¶ 5. Judge McNichols then used sections 201.21 and 201.28 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 405, ¶ 10). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 406, ¶ 11).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments. (Doc. 8). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments.

Plaintiff has a history of breast cancer. Plaintiff underwent a lumpectomy and chemotherapy in 1997, and did well until February, 2000, when she experienced a recurrence of cancer and underwent a left modified radical mastectomy and another course of chemotherapy. (Tr. 130-59, 154, 173, 495-503). After Plaintiff reported having tingling in her knees and pain in her feet, treating oncologist Dr. Merl identified Plaintiff's diagnosis as neuropathy. (Tr. 204-05, 286-87).

On September 20, 2001, and March 11, 2002, Dr. Merl reported that Plaintiff's diagnoses were history of breast cancer and neuropathy and that she had normal abilities to sit, stand, and sustain concentration and persistence. (Tr. 190-92, 193-96). Dr. Merl also reported that Plaintiff had an impaired ability to walk due to her pain and use of narcotics, and that while her gait

5

was slow, she did not need an assistive device to walk. *Id.*

On September 24, 2001, Dr. Merl reported that Plaintiff could stand/walk less than one hour total during an eight-hour workday, sit less than one hour total during an eight-hour workday, lift no more than five pounds, and had extreme limitations in her ability to push/pull, bend, reach, handle, and perform repetitive foot movements. (Tr. 247-48). Dr. Merl also reported that Plaintiff had severe pain in her feet which "prevent[ed] activities directly and indirectly" and he opined that Plaintiff was unemployable. *Id.*

In July, 2002, Plaintiff reported to Dr. Merl that her chronic pain was somewhat better, that she had recently developed low back pain, and that she used a cane for ambulating due to the back pain. (Tr. 292; 294). Dr. Merl reported that Plaintiff exhibited no neurological abnormalities and he ordered a bone scan which revealed no obvious bony metastatic disease. (Tr. 249, 292).

The record contains the treatment notes of pain specialist Dr. Smith dated August 15, 2002, through April 8, 2003. (Tr. 296-308). On March 28, 2003, Dr. Smith reported that he began treating Plaintiff on March 18, 2002, for pain in both feet following chemotherapy as well as pain in the area of her mastectomy scar, that Plaintiff's pain had been present for two years, and that the pain became so severe after two chemotherapy treatments that she discontinued treatment. *Id.* Dr. Smith also reported that Plaintiff's diagnoses were neuropathic pain of the feet following chemotherapy and that there was EMG evidence of carpal tunnel syndrome, that numerous medications had been tried as well as carpal tunnel injections, and that on her last office visit she reported significant improvement in her pain level. *Id.* Dr. Smith noted that Plaintiff's pain complaints were reasonable and consistent with her diagnosis, that she was not able to function at

6

the level required to perform any type of work activity, and that she became disabled shortly after her chemotherapy began. *Id.* Dr. Smith also noted that Plaintiff was able to lift and carry up to five pounds occasionally and two pounds frequently, stand/walk for two hours in an eight-hour workday and for five minutes without interruption, sit for five hours in an eight-hour workday and for two hours without interruption, and that she was not able to perform sedentary or light work. *Id.*

Dr. Merl reported on March 17, 2003, that he first started seeing Plaintiff in December, 1997, at which time she was diagnosed with breast cancer and was treated with chemotherapy, that she had a recurrence in February, 2000, at which time she underwent a mastectomy for recurrent breast cancer, that she subsequently received chemotherapy. (Tr. 286-87). Dr. Merl also reported that after her first dose of the chemotherapy agent, Plaintiff reported tingling in her knees and after the second dose she had chest tightness, foot pain, and mouth pain, and that the chemotherapy was discontinued. *Id.* Dr. Merl noted that Plaintiff continued to have neuropathy with significant pain in her feet, and that Dr. Smith had been managing her pain since 2002. *Id.* Dr. Merl also noted that Plaintiff felt greatly incapacitated by pain in her feet and hands, but that there was no recurrence of the breast cancer. *Id.* Dr. Merl opined that Plaintiff was unable to work due to her pain and the requirements of her pain medications. *Id.*

Examining physician Dr. Danopulos reported on September 2, 2003, that both of Plaintiff's palms at the carpal area were painful, both feet were painful by palpation, her spinal exam revealed that lumbosacral spine extension was restricted and motions were painful, there was no evidence of nerve root compression, and that her neurological exam was normal. (Tr. 310-22). Dr. Danopulos also reported that the objective findings were status post left breast removal with evidence of peripheral neuropathy from chemotherapy, early bilateral carpal tunnel syndrome,

7

history of borderline glaucoma not being treated, bilateral knee arthralgias, lumbar spine arthralgias, and being allergic to different components. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform work-related activities was affected only by the status post left breast removal due to cancer with bilateral pain in both feet due to neuropathy which restricts her ability to walk, carry, and lift. *Id.* Dr. Danopulos also opined that Plaintiff was able to stand/walk for two hours in an eight-hour day and for five minutes without interruption and that her ability to sit was not affected by her impairments. *Id.*

Plaintiff continued to receive treatment from Dr. Smith during the period May 9, 2003, through January, 2007. (Tr. 603-35; 679-86). Treatment modalities included lumbar blocks, TENS unit and various medications for pain management. *Id.* On December 19, 2003, Dr. Smith reported that Plaintiff's diagnosis was reflex sympathic dystrophy of the right leg, her condition was poor but stable, that she was able to stand/walk for one hour in an eight-hour day and for ten minutes without interruption, sit for five hours in an eight-hour day, lift up to five pounds occasionally , and that she was unemployable. *Id.* Dr. Smith reported in July, 2005, that Plaintiff's diagnosis was peripheral neuropathy of the feet, that her condition was good/stable with treatment, that she could stand/walk for one to two hours in an eight-hour day, sit for three to four hours in an eight-hour day and for one and one half hour without interruption, and that she was unemployable. *Id.* On March 27, 2006, Dr. Smith reported that Plaintiff was able to stand/walk for a total of one to two hours in an eight-hour day and for one hour without interruption, sit for two to three hours in an eight-hour day and for one hour without interruption, that she was able to lift/carry up to five pounds, and that she was unemployable. *Id.*

Plaintiff was diagnosed with right breast cancer in September, 2005, (Tr. 507-10),

and on September 28, 2005, she underwent a right modified radical mastectomy. (Tr. 535-53). Plaintiff subsequently received treatment from oncologist Dr. Yanes, (Tr. 585-90, 592-93; 687-92). By January 12, 2006, Plaintiff had undergone four cycles of chemotherapy. *Id.*

A March 12, 2007, EMG revealed findings consistent with an ulnar nerve compression across the elbow in the right side and a mild peripheral polyneuropathy in the lower extremities. (Tr. 745).

Examining physician Dr. William Smith reported on May 2, 2007, that Plaintiff's strength in the upper extremities was within normal limits, although her pinch strength was very weak bilaterally, that Plaintiff could not identify objects in both hands with her eyes closed without difficulty, her grip strength was twenty pounds on the right and ten pounds on the left, and her "effort was probably reliable." (Tr. 693-707). Dr. Smith also reported that Plaintiff's reflexes were absent in both biceps and triceps in her upper extremities, sensation to pin and cotton were decreased in both hands including fingers, muscle strength testing in the lower extremities was normal, pinprick was decreased over both feet and in stocking distribution of the legs up to the knees anteriorly and posteriorly, position sense was decreased in both big toes, and that ankle reflexes were absent bilaterally. *Id.* Dr. Smith identified Plaintiff's diagnoses as neuropathy in the upper and lower extremities related to past chemotherapy. *Id.* Dr. Smith opined that Plaintiff could lift up to ten pounds occasionally and that she was able to sit for eight hours in an eight hour day and for two hours without interruption, stand for two hours in an eight hour day and for ten to thirty minutes without interruption, and that she was able to walk for two hours in an eight hour day and for ten to fifteen minutes without interruption. *Id.* Dr. Smith noted that it was necessary for Plaintiff to use a cane and that she should walk only ten feet without using it. *Id.*

9

At the hearing, a medical adviser (MA) first summarized the medical evidence and then testified that none of Plaintiff's impairments met or equaled the Listings. (Tr. 788-99). The MA testified further that Plaintiff's neuropathy would restrict her to a sitting position. *Id.* The MA also testified that tobacco can aggravate neuropathy and Plaintiff needed to stop smoking. *Id.* The MA testified additionally that weather changes could affect neuropathy. *Id.* The MA further testified that there were repetitive assessments of Plaintiff's lower extremities in the record by multiple sources who opined that Plaintiff could stand and walk up to two hours per workday. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting her treating physician's opinion and by rejecting her subjective complaints of pain. (Doc. 8).

In support of her first Error, Plaintiff argues that the Commissioner erred by failing to give the proper evidentiary weight to treating physician Dr. Townsend Smith's opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating

source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rul 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge McNichols did not give Dr. Smith's opinions "controlling weight or any weight beyond what is established as the residual functional capacity" because he specifically determined that Dr. Smith's opinions were based on Plaintiff's subjective complaints. (Tr. 398). As noted above, Dr. Smith opined on numerous occasions that Plaintiff was unable to perform even sedentary work. (Tr. 296-301, 679-86). However, Judge McNichols noted that Dr. Smith's records do not contain objective clinical findings which support his opinions. *Id.* For example, Dr. Smith's treatment notes generally reflect that Plaintiff was in no acute distress, (Tr. 604, 606, 608, 610, 612, 614, 617, 626, 632, 634), and her that her self-reported pain levels were 0-4 out of 10, (Tr. 625, 632), or 5-6 or 6-7 out of 10. (Tr. 606, 610, 612, 614). In October, 2003, Plaintiff reported her pain had improved fifty to sixty percent, (Tr. 628), yet in December, 2003, Dr. Smith reported that

Plaintiff was able to stand/walk for only up to one hour a day and for only ten minutes at a time. (Tr. 685-86). In February, 2004, Dr. Smith reported that Plaintiff's ranges of motion in both hands and lower extremities is within normal limits, and that she could "easily ambulate across the office floor." (Tr. 625). In June, 2004, Plaintiff reported that with a Lidocaine infusion, her pain levels decreased from a 9/10 to a 2-3/10, (Tr. 621), and in January, 2005, she reported an overall forty percent improvement in her pain since her initial evaluation. (Tr. 614). Dr. Smith's notes show that in March, 2006, Plaintiff reported that she had improvement with her pain on Lyrica and that the steroid injections helped with her wrist pain. (Tr. 604). In July, 2005, Plaintiff reported the MS Contin seemed to be helping to control her pain symptoms, (Tr. 610), and October, 2005, Dr. Smith reported that his examination of Plaintiff's upper extremities was within normal limits. (Tr. 608).

Judge McNichols noted further that the more recent evidence did not reflect that Plaintiff had any sustained, substantial interaction with any other treating source than Dr. Smith. (Tr. 403). As Judge McNichols noted, Plaintiff's last documented visit with Dr. Smith was in September, 2006, at which time he performed wrist injections but did not perform an examination nor discuss her overall condition. (Tr. 726). Dr. Smith approved some pain medications in December, 2006, (Tr. 721), but otherwise, Plaintiff apparently saw Dr. Smith's nurse in 2006 and 2007. (Tr. 712-36).

In addition to not being supported by his own clinical notes, Dr. Smith's opinion is inconsistent with examining physician Dr. Danopulos' opinion as well as with examining physician Dr. William Smith's conclusions. Specifically, as noted above, those physicians determined that, in spite of her alleged impairments, Plaintiff was able to perform activities consistent with a limited range of sedentary work. (Tr. 310-22; 693-707). Finally, Dr. Smith's opinion is inconsistent with

the MA's testimony and opinion.

Under these facts, the Commissioner did not err by giving little, if any, weight to Dr. Smith's opinion that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred by failing to find that she has disabling pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

Although he determined that Plaintiff has severe impairments Judge McNichols determined that Plaintiff's complaints of disabling pain and limitations were not entirely credible

14

essentially because they are not supported by the record. (Tr. 402-04). This Court agrees.

For essentially the same reasons that the Court concluded the Commissioner had an adequate basis for rejecting Dr. Smith's opinion, the Court concludes that the Commissioner had an adequate basis for finding Plaintiff less than entirely credible. For example, and as noted above, the clinical notes of the treating physician, Dr. Smith, contain few objective findings reveal that Plaintiff frequently reported improvement in her pain. Additionally, the March, 2007, EMG revealed, at worst, mild peripheral neuropathy. Finally, Plaintiff engages in a variety of activities including attending a welfare class 22 hours a month, usually between 1 -1 ½ hours daily, driving, cooking, doing laundry, performing household chores, and visiting others. Those activities are inconsistent with an allegation of total disability.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 20, 2010.

                 *s/ Michael R. Merz*
                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).